# IN THE COURT OF APPEALS OF IOWA

No. 25-0730
Filed August 6, 2025

IN THE INTEREST OF A.H.,
Minor Child,

T.H., Father,
    Appellant,

K.H., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Hancock County,
Karen Kaufman Salic, Judge.

Parents jointly appeal the termination of their parental rights to their child.
**AFFIRMED.**

Theodore J. Hovda, Garner, for appellant father.

Jane M. Wright, Forest City, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, for appellee State.

Carrie J. Rodriguez, Garner, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Badding and
Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Parents jointly appeal the termination of their parental rights to their child, A.H., a daughter born in 2018.[1] They challenge one of the statutory grounds for termination, claim termination is not in the child's best interests due to the parent-child bond, and request an additional six months to work toward reunification. Upon our review, we affirm.

I.      **Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Health and Human Services (the department) in early 2024, when the parents' one-month-old twins were diagnosed with failure to thrive, weighing only approximately five and six pounds respectively. The parents were married and described as extremely co-dependent. Both exhibited mental health concerns.

Family-preservation services were initiated. Caseworkers reported the mother was unable to retain parenting skills and needed constant reminders to keep the children safe. The parents' older child, six-year-old A.H., was more of a caretaker for the twins than the parents. A.H. was also being neglected.

The department was also concerned with the condition of the family's home, noting it was cluttered, filled with rotting garbage, infested with mice, missing flooring, and otherwise "uninhabitable." The children were removed from the parents' custody, placed in foster care,[2] and adjudicated in need of assistance.

---

[1] The parents signed a joint notice of appeal and filed a joint petition on appeal, advancing similar claims.

[2] The twins were removed first and were reported to be "grossly" underweight. A.H. was removed shortly thereafter, and she was placed with the same foster family as her twin brothers.

Although the parents took some steps to address the condition of their home and their ability to parent the children safely, they failed to make meaningful progress. After nearly a year of services, the court entered an order terminating the parents' parental rights to the twins, which this court affirmed on appeal. *See In re R.H.*, No. 24-2028, 2025 WL 1074862, at \*5 (Iowa Ct. App. Apr. 9, 2025).

In February 2025, the State filed a petition for termination of the parents' parental rights to A.H. The hearing took place in April. The father testified the family's home was significantly cleaned up but the basement was "[s]till a work in progress." The parents' visits continued to take place, fully supervised, outside of the family home. The department caseworker acknowledged the main floor of the home was not a safety concern for a child of A.H.'s age but expressed concern that the parents' efforts to address the condition of the home were prompted because "the upcoming hearing [was] looming." The mother still needed constant help with basic parenting, including reminders to make sure A.H. "stays safe" during visits. The department remained concerned about the parents' ability to provide for A.H.'s needs, citing as an example their failure to file the paperwork to correct A.H.'s birth certificate, which incorrectly listed her gender.

The department recommended termination of parental rights. As the caseworker reported:

> [A.H.] needs a safe and stable environment in order to develop appropriate emotional and behavioral interactions with others. She has made significant progress since placement outside of the parental home. Along with the safety concern, a return to the home would likely result in a regression of or a reversion to the prior concerns with hygiene, poor dental practices, poor school attendance, and lack of healthy social skills. Given the extensive history of therapeutic services offered, and provided, over the past thirteen months, the future prognosis for the family is very guarded.

[A.H.] is at high risk of neglect if returned to the parental home at this time or in the near future.

Similarly, the guardian ad litem (GAL) "remain[ed] very concerned about the parents' ability to care for [A.H.] and prioritize her needs." As the GAL reported, "Even under the Department's watchful eye, parents don't always make choices that are in their own best interest, let alone [A.H.]'s. Parents often prioritize their own needs or even those needs of their family and friends." The GAL noted that both parents completed a parenting evaluation in August 2024, which stated neither should be left unsupervised with their children unless their adaptive functioning levels increase. And the GAL reported:

> Almost eight months have passed since that report was authored, and neither parents' adaptive functioning has increased. Neither parent has been able to proceed with anything other than supervised visitation. During the supervised visitation, it is typical for the [family-centered services] provider to step in and provide prompts at each and every visit.

The GAL concurred with the department's recommendation for termination, opining, "I know that both of her parents love her very much and I know that they want the best for her, but [A.H.] simply can't be returned to their home at this time."

Following the hearing, the court entered an order terminating both parents' rights under Iowa Code section 232.116(1)(f) and (g) (2025). They jointly appeal.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Upon our review, our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III.     Grounds for Termination

The court terminated the parents' parental rights under section 232.116(1)(f) and (g).  The parents challenge the termination only under paragraph (f)[3] and not under paragraph (g).  When the court terminates parental rights on more than one statutory ground, we can affirm the order on any ground we find supported by the record.  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  Because the parents do not challenge termination under paragraph (g), they have waived any claim of error on these grounds.  *See In re L.H.*, No. 24-1791, 2025 WL 52768, at *3 (Iowa Ct. App. Jan. 9, 2025).  Accordingly, we affirm termination of their parental rights under section 232.116(1)(g).

### IV.     Best Interests

Termination also must serve the child's best interests.  *See* Iowa Code § 232.116(2).  To determine best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  *Id*.  The parents claim termination is not in the child's best interests due to the "close bond" they share with her.

Here, the court stated it had "no doubt that these parents care about their child[], but it is disingenuous to say that there is a strong connection that [A.H.] feels toward them."  Even considering that a bond exists between the parents and the child, we conclude termination of their parental rights is in A.H.'s best interests.  *See In re B.S.*, No. 20-1643, 2021 WL 609093, at *1 (Iowa Ct. App. Feb. 17, 2021)

---

[3] And we construe their challenge under paragraph (f) liberally; they cite the incorrect paragraph in their argument heading.

(considering the bond between a mother and child in the best-interests analysis). The defining elements of the best-interests analysis are child's safety and the need for a permanent home. *Id.* Before the children were removed, A.H. provided most of the care for her younger siblings, including missing school to do so. And after more than one year of services, the family's home remained in a questionable state. A parenting evaluator opined that neither parent should be left alone with the child. We concur with the court's finding that "these parents simply do not have the ability to care for [A.H.]." Termination is in the child's best interests.

## V.     Additional Time

In passing, the parents request "they be given an additional six months to show their ability to parent their child." The parents did not raise this issue before the district court. In any event, their "cursory argument is not supported by any factual discussion or legal authority. Accordingly, we find this argument has been waived." *L.H.*, 2025 WL 52768, at *4; *see also In re A.M.*, No. 24-0428, 2024 WL 3050771, at *3 (Iowa Ct. App. June 19, 2024).

## VI.     Conclusion

Having addressed the claims properly before us on appeal, we affirm the termination of the parents' parental rights.

**AFFIRMED.**